El Pueblo de Puerto Rico, demandante y apelado, *v.* Miguel A. Ramos García, acusado y apelante.

*Número:* CR-64-418      *Resuelto:* 19 de mayo de 1965

*Rafael S. Fuentes Rivera,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Manuel Tirado Viera, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

El Juez Asociado Señor Dávila emitió la opinión del Tribunal.

Mientras dos policías patrullaban el sector Caparra Terrace cerca de las once de la noche pasaron frente al

Bloque L-J de esa urbanización y observaron al apelante que estaba dentro de su automóvil haciendo sonar la bocina frecuentemente. Al desmontarse los agentes del automóvil en que viajaban y proceder a la investigación de rigor, encontraron al apelante "con su auto prendido y recostado sobre el guía como si hubiera estado dormido sobre el guía".(1) Al notar que su apariencia física no era normal y que expedía fuerte olor a licor procedieron a su arresto y traslado al Hospital Municipal de Santurce donde se le tomó una muestra de sangre. El resultado del análisis practicado fue de 0.23 por ciento de alcohol por peso.

Se le acusó de infringir la Sec. 5-801 de la Ley de Vehículos y Tránsito.(2) Se le imputó que "conducía o hacía funcionar por la vía pública [un] automóvil. . . estando bajo los efectos de bebidas embriagantes". El tribunal resolvió el conflicto en la prueba y declaró culpable al acusado. Fue sentenciado a cumplir diez días de cárcel. Le suspendieron la licencia de conductor por el término de un año.

Ataca el apelante la acusación radicada. Sostiene que "siempre se considera una incongruencia fatal acusar disyuntivamente. . . si la disyuntiva en la exposición (*averment*) de los hechos en que se funda la acusación produce incertidumbre en cuanto a cual de las dos alternativas es la que se intenta seguir".

El acusado no levantó esta cuestión previo al juicio. Indudablemente que tenía derecho a saber por cuál de las dos modalidades "conducir" o "hacer funcionar" se le acusaba. Pero esa cuestión la tenía que plantear atacando la acusación antes del juicio. El Art. 152 del Código de Enjuiciamiento Criminal,(3) vigente entonces, disponía que [e]l

---

(1) Declaración del agente Roberto García Méndez. (T.E., pág. 7.)

(2) La disposición que se alegó infringida dispone:

"Será ilegal que cualquier persona bajo los efectos de bebidas embriagantes conduzca o haga funcionar cualquier vehículo de motor." 9 L.P.R.A. sec. 1041(a) (ed. 1963).

(3) Ver Regla 64 de las de Procedimiento Criminal de 1963.

acusado podrá poner reparos a la acusación, cuando de su contenido resultare. . ." que "[i]mputare en cualquier cargo de la acusación o denuncia más de un delito público". En *Pueblo* v. *Adorno*, 81 D.P.R. 518, 534 (1959) ratificando dictámenes anteriores, resolvimos que si esta cuestión no se suscita a su debido tiempo mediante excepción a la acusación, no puede levantarse en apelación. Además en *Pueblo* v. *Rivera Flores*, 87 D.P.R. 328 (1963), expusimos:

"La regla parece ser que cuando un estatuto prescribe como delictivas dos o más actuaciones o transacciones que resultan separadas y distintas, enumerándola en la disyuntiva (*disjunctively*)—o sea, estableciendo una alternativa mediante el término de relación disyuntiva *o,* que obliga a optar por una de ellas— se puede presentar una acusación por todas conjuntamente (*conjunctively*) y el acusado puede ser declarado culpable por cualquiera de ellas."

Sostiene el apelante que fue error concluir que había infringido la ley. Su contención es al efecto de que como el automóvil estaba detenido, según lo estableció la prueba de cargo, no estaba cometiendo el delito que se le imputó. Invoca a *Pueblo* v. *Rivera Flores,* supra.

En *Rivera Flores* la acusación fue por "conducir" un vehículo bajo los efectos de bebidas embriagantes. Se concluyó que la prueba no demostró que el acusado estuviera "conduciendo" el vehículo.

■ En el presente caso se acusó al apelante de "conducir o hacer funcionar" un vehículo de motor bajo los efectos de bebidas embriagantes. Bajo esta última modalidad del delito, no es necesario probar que el automóvil en que se encuentra la persona estaba en movimiento sino que es suficiente que, como en el presente caso, se demuestre que ésta se hallaba dentro del automóvil, con el motor en marcha y bajo su inmediato control o dominio. Es generalmente aceptado que cuando estatutos como el que se alega infringido prohiben además de la actividad de conducir otra que bien

puede ser "operar o hacer funcionar" estas últimas incluyen situaciones como las que presenta el caso de autos.

Evidentemente el legislador algún propósito tuvo al usar dos conceptos distintos "conducir o hacer funcionar". Todos sabemos lo que significa conducir un vehículo de motor. Así cuando el legislador adicionó el concepto "haga funcionar" fue para incluir otra actividad distinta. En *Rivera Flores* hicimos referencia a la historia legislativa del estatuto en cuestión. Expresamos que: "[l]a historia legislativa de la Sec. 5-801 demuestra que primero se empleó la palabra 'conducir' como el único acto punible; posteriormente se pensó en una enmienda por inclusión de las palabras 'o tenga físicamente bajo su control cualquier vehículo' y por último se decidió sustituir las palabras anteriores por 'hacer funcionar': 13-III Diario de Sesiones 1409 y 13-V obra citada 2276. Siendo esto así, el término 'conduzca' y el término 'haga funcionar' incluidos como tales en la última redacción de estilo de la Sec. 5-801, significan dos actuaciones distintas en la alternativa. . . ."

Expusimos además en *Rivera Flores*, citando de 3 Wharton's *Criminal Law & Procedure*, Sec. 993–994 (ed. 1957):

"Aunque los estatutos que prohiben el conducir mientras se esté intoxicado y aquéllos que prohiben el hacer funcionar (*operating*) un vehículo de motor mientras se esté intoxicado existen para el mismo propósito, o sea, proteger a los que usan los caminos públicos contra el peligro de vehículos en manos de personas bajo los efectos de bebidas embriagantes, se ha reconocido por algunos tribunales una distinción entre ambos términos. El hacer funcionar (*operating*) se ha interpretado como que incluye otros actos no comprendidos dentro del término conducir (*driving*). El mero arrancar (*start*) de un automóvil, se ha sostenido, constituye el hacer funcionar (*operation*) de dicho automóvil dentro del significado de un estatuto que prohibe hacer funcionar un vehículo de motor por una persona bajo los efectos de intoxicantes.

"Algunos tribunales han sostenido que cualquier manipulación del mecanismo o sistema eléctrico de un vehículo de motor,

que por sí sola o formando parte de cierta secuencia, ponga en movimiento la fuerza motriz del vehículo, es el 'hacer funcionar el vehículo' (*operation of the vehicle*) dentro del significado del estatuto prohibiendo hacer funcionar un vehículo de motor por una persona intoxicada, por lo menos, si hay la intención de mover el automóvil.

"El más mínimo funcionamiento del motor por una persona intoxicada constituye una violación del estatuto . . . ."

Ver además: *State* v. *Peirson*, 204 A.2d 838 (Conn. 1964); *State* v. *Pritchett*, 173 A.2d 886 (Del. 1961); *Flournoy* v. *State*, 128 S.E.2d 528 (Ga. 1962); *State* v. *Webb*, 210 N.W. 751 (Iowa 1926); *State* v. *Sweeney*, 187 A.2d 39 confirmado en 192 A.2d 573 (N.J. 1963); *Bradam* v. *State*, 235 S.W.2d 801 (Tenn. 1950); *Gallagher* v. *Commonwealth*, 139 S.E.2d 37 (Va. 1964); 8 *Blash Auto* § 5393 (ed. 1950); Anno., *Driving While Drunk*, 47 A.L.R.2d 370 (1956).

*Se confirmará la sentencia apelada.*