## 20509

The STATE, Appellant, v. Johnny GRAVES, Respondent.

(237 S. E. (2d) 584)

*Daniel R. McLeod, Atty. Gen., Joseph C. Coleman, Dep. Atty. Gen.,* and *Richard P. Wilson, Asst. Atty. Gen.,* of Columbia, *for Appellant,*

*Franklin R. DeWitt,* of Conway, *for Respondent,*

September 12, 1977.

GREGORY, Justice.

This is an appeal by the State from an order of the circuit court reversing respondent's conviction and sentence in the magistrate's court for driving under the influence of intoxicants in violation of Section 56-5-2930 of the 1976 Code of Laws of South Carolina. We affirm.

The respondent was arrested at approximately 5:00 A. M., November 1, 1975 by State Highway Patrolman J. I. Strickland for driving under the influence of intoxicants and was summoned by service of a uniform traffic ticket to appear before Magistrate Allen M. Flowers for trial on November 4, 1975. Counsel was subsequently retained and a jury trial held on November 24, 1975.

At trial, Patrolman Strickland testified that at approximately 5:00 A. M., November 1, 1975, he was called to go to the Pink House on Highway 76 about one-half mile east of the City of Marion, South Carolina. There, across the highway from the Pink House, he saw a 1972 Pontiac, with the engine running and the transmission in gear, occupied by respondent who was leaning over the steering wheel asleep. Respondent was asked by Patrolman Strickland to get out of his car, at which time the car started moving and had to be stopped by Patrolman F. O. Buffkin who was also in attendance at the scene. Patrolman Strickland observed a strong odor of alcohol about the respondent as well as some physical impairment and placed him under arrest.

Patrolman Strickland testified on cross examination that Patrolman Buffkin assisted and that although he did not see respondent driving the car, he was of the opinion respondent was in control of the car.

Respondent was found guilty by the jury and sentenced to pay a fine of $100.00 or serve thirty days.

Notice of intention to appeal was duly filed, and the matter came before the circuit court on February 6, 1976. In an order dated February 9, 1976, the circuit court set aside the respondent's conviction and sentence after finding that it was error for the magistrate to have refused to grant respondent's motion for a directed verdict at the close of the State's case. The basis for the circuit court's ruling was that "the arresting officer did not see appellant (now respondent)

commit the offense for which he was charge," that of driving under the influence of intoxicants.

The essential question presented by this appeal is whether or not the respondent's actions on November 1, 1975, as testified to by Patrolman Strickland, constitute driving under the influence of intoxicants within the meaning of Section 56-5-2930, 1976 Code of Laws. The statute in pertinent part provides: "It is unlawful for any person * * * who is under the influence of intoxicating liquors, narcotic drugs, barbiturates, paraldehydes or drugs, herbs or any other substance of like character, whether synthetic or natural, *to drive* any vehicle within this State" (emphasis added).

Because Section 56-5-2930 is penal in nature, we must approach its interpretation by invoking the rule of strict statutory construction and resolve any uncertainty or ambiguity against the State and in favor of the respondent. *State v. McCord,* 258 S. C. 163, 187 S. E. (2d) 654 (1972).

Sections 56-5-400 and 56-1-10(1) of the 1976 Cole of Laws define driver as: "Every person who drives or is in actual physical control of a vehicle"; and Section 56-1-10 (2) defines operator as: "Every person who drives or is in actual physical control of a motor vehicle upon a highway or who is exercising control over or steering a vehicle being towed by a motor vehicle." Section 56-9-20(10) also defines operator as: "Every person who is in actual physical control of a motor vehicle, whether or not licensed as an operator or chauffeur under the laws of this State." Section 56-5-2930 makes it a penal offense for any person to "drive any vehicle within this State" while in an intoxicated condition.

Section 56-5-2930 is a portion of the Uniform Act Regulating Traffic on Highways which is a substantial adoption of the uniform act by the same name that was approved by the National Conference of Commissioners of Uniform

State Laws, 1926, as revised in 1930 [withdrawn as obsolete in 1943]. This uniform act has served as the basis for the motor vehicle codes of numerous states, most of which have adopted a provision that is simlar to Section 56-5-2930.

Section 56-5-2930 is modeled after Article V Section 18 of the approved Uniform Act as revised in 1930, which reads as follows:

It shall be unlawful and punishable as provided in subdivision (b) of this section for any person who is an habitual user of narcotic drugs or any person who is under the influence of intoxicating liquor or narcotic drugs to drive any vehicle upon any highway within this state.

Although South Carolina adopted the phrase "drive any vehicle within this state" from the approved Uniform Act as revised in 1930, several states adopted this provision with amendments that also prohibit the "operation" of an automobile while in an intoxicated condition. While choosing to define both "driver" and "operator", the 1949 General Assembly by Act 281 of 1949, 1949(46) 466, proscribed only driving a motor vehicle while intoxicated, and did not proscribe operating.

The distinction between these terms is material, for it is generally held that the word "drive", as used in statutes of this kind, usually denotes movement of the vehicle in some direction, whereas the word "operate" has a broader meaning so as to include not only the motion of the vehicle, but also acts which engage the machinery of the vehicle that, alone or in sequence, will set in motion the motive power of the vehicle. *Flournoy v. State,* 106 Ga. App. 756, 128 S. E. (2d) 528 (1962), *Gallagher v. Commonwealth,* 205 Va. 666, 139 S. E. (2d) 37 (1964).

This distinction is well noted in an extensive annotation at 47 A. L. R. (2d) 570, 571:

Although statutes prohibiting "driving" a motor vehicle while under the influence of intoxcating liquor and those

prohibiting "operating" a motor vehicle while in a similar condition exist for the same general purpose of protecting the users of the highways from the hazard of vehicles controlled by persons unler the influence of alcohol, a certain distinction between the two terms is nevertheless recognized. Of the two terms, "driving" is given the stricter construction, and in numerous cases it has been held that to be guilty of driving a vehicle while intoxicated, the defendant must have had the vehicle in motion at the time in question. While in a few cases the term "operating" has been given a similar limited construction, "operatng" has been more liberally construed in other cases to include starting the engine or manipulating the mechanical or electrical agencies of a vehicle (footnotes omitted).

It is also stated at 60 C. J. S. *Motor Vehicles* § 6(2) that:

As used in connection with motor vehicles, the word "drive" usually denotes movement of the vehicle in some direction, and the word "operate" may also import motion—of the automobile; but the word "operate" may have a somewhat broader meaning, and may not necessarily be limited in meaning to the movement of the vehicle itself, that is, it may not be limited to a state of motion produced by the mechanism of the car. It may include not only the motion of the vehicle, but also acts which engage the machinery of the vehicle which, alone or in sequence, will set in motion the motive power of the vehicle. Thus, a person is considered to operate a vehicle when, in the vehicle, he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of that vehicle (footnotes omitted).

See also: 7 Am. Jur. (2d) *Automobiles and Highway Traffic* § 256; 42 A. L. R. 1498; 49 A. L. R. 1389; 68 A. L. R. 1356; 13A Words and Phrases "Drive" pp. 37-39; 13A Words and Phrases "Driving" pp. 44-46; 29A Words and Phrases "Operate" pp. 396-400; and *Nicolls v. Commonwealth,* 212 Va. 257, 184 S. E. (2d) 9 (1971) (de-

fendant found asleep at the steering wheel of a parked car with the motor running and the transmission in gear may be convicted of operating a motor vehicle while intoxicated).

In the case of *State v. Sheppard,* 248 S. C. 464, 150 S. E. (2d) 916 (1966) this Court stated that the conduct proscribed by Section 56-5-2930 is "the operation of a motor vehicle by one who is under the influence of intoxicating liquor or drugs," and that "(t)he act of operating a motor vehicle with impaired faculties is the gravamen of the offense." 248 S. C. at 466, 150 S. E. (2d) at 917. In *Sheppard* we used the terms "driving" and "operating" synonymously, but the issue before the Court in that case clearly involved driving, not operating, and we employed the two terms interchangeably in only their common and informal sense.

In *Truesdale v. South Carolina Highway Dept.,* 264 S. C. 221, 213 S. E. (2d) 740 (1975) we were presented with the question of whether or not the phrase "while being operated" as used in Section 15-77-230 limited the effect of that statute to only those cases where the motor vehicle was in motion. In holding that motion was not an essential element of operating an automobile, we recognized the distinction intended by the General Assembly in its choice of the word "operate" instead of "drive."

Section 56-5-400 defines "driver" as "Every person who drives or is in actual physical control of a vehicle . . . ." It would seem clear that the statute provides two distinct definitions of "driver," for "driving" and "being in actual physical control" can describe the same activity only if we treat the phrase "or is in actual physical control" as useless baggage. Such a construction would run counter to the principle that "a statute should be so construed that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous . . . ." 82 C. J. S. Statutes § 346. *Savannah Bank & Trust Co. of Savannah v. Shuman,* 250 S. C. 344, 157 S. E. (2d) 864 (1967).

In its present form Section 56-5-2930 proscribes only the conduct of "driving any vehicle within the State" while under the influence of intoxicants. It does not prohibit being a "driver" of a motor vehicle while in a similar condition and thus it does not proscribe both driving and being in actual physical control of an automobile while intoxicated. The statute prohibits "operating" a motor vehicle while intoxicated only to the extent that driving of necessity includes operating.

We now hold that within the meaning of Section 56-5-2930, the word "drive" requires the vehicle to be in motion to constitute the offense. This requirement may be met by either direct or circumstantial evidence.

The record indicates that respondent's vehicle began to move after respondent was asked by the arresting officer to get out of his car, but this movement was incidental to the officer's instructions and is not the type of movement proscribed by the statute:

A mere movement of the vehicle might occur without any affirmative act by a driver, or, in fact by any person. If a vehicle is moved by some power beyond control of the driver, or by accident, it is not such an affirmative or positive action on the part of the driver as will constitute a driving of a vehicle within the meaning of the statute. *State v. Taft,* 143 W. Va. 365, 367, 102 S. E. (2d) 152, 154 (1958).

Although respondent's actions on November 1, 1975 constituted both being "in actual physical control", *People v. Chamberlain,* 5 Ill. App. (3d) 235, 282 N. E. (2d) 784 (1972), and "operating", *Nicolls v. Commonwealth, supra,* a motor vehicle while intoxicated, his actions did not constitute "driving" within the meaning of Section 56-5-2930, since there was no showing by direct or circumstantial evidence that respondent had placed his vehicle in motion while under the influence of intoxicants.

The General Assembly may bring conduct such as respondent's within the prohibition of Section 56-5-2930 by simply adding the phrase "or operate" to the statute so as to make it unlawful for any person "to drive *or operate* any vehicle within this State" while under the influence of intoxicants.

Affirmed.

LEWIS, C. J., and RHODES, J., concur.

LITTLEJOHN and NESS, JJ., dissent.

NESS, Justice (dissenting) :

Not subscribing to the narrow technical definition of "driving" adopted by the majority, I dissent.

While it is true that some courts in other jurisdictions have distinguished the terms "operating" and "driving" a motor vehicle, according a narrower definition to the latter, other courts have construed the terms as being synonymous. See *State v. Michael,* 141 W. Va. 1, 87 S. E. (2d) 595 (1955) ; *State v. Sullivan,* 146 Me. 381, 82 A. (2d) 629. As stated in 60 C. J. S. Motor Vehicles § 6(2) :

"The words 'operate' and 'drive,' as applied to motor vehicles, may be synonymous, since, according to popular acceptance, to operate a motor vehicle is the same as to drive it . . ."

This Court, in considering an indictment brought under the present statute's predecessor, Section 46-343, Code of 1962, used the terms "operating" and "driving" interchangeably. *State v. Sheppard,* 248 S. C. 464, 150 S. E. (2d) 916 (1966). Although the exact language of the statute made it unlawful "to drive any vehicle within this State" while in an intoxicated condition, this Court stated:

"The act of *operating* a motor vehicle with impaired faculties is the gravamen of the offense . . ." *State v. Sheppard,* 248 S. C. at 466, 150 S. E. (2d) at 917. (Emphasis added).

I perceive no compelling reason why this Court should now abandon the common sense interpretation of the two terms in favor of a narrow, technical construction.

Moreover, even if a distinction is to be drawn between "operating" and "driving" a motor vehicle, the conduct of respondent arguably falls within the definition of "driving." The term "driver" is defined in Sections 56-5-400 and 56-1-10(1) of the 1976 Code of Laws as: "Every person who drives *or is in actual physical control of a vehicle.*" (Emphasis added). The arresting officer in this case testified that in his opinion, respondent was in control of the car. Furthermore, when respondent was asked to get out of the car, the vehicle began to move forward and had to be stopped by another patrolman on the scene.

The majority's strained construction of the statute cuts against the social purpose behind the provision, *i.e.,* the apprehension of persons whose intoxication renders them unfit to operate a motor vehicle. Respondent here started his automobile and put the car in gear. The fact that his level of intoxication caused him to pass out before he accelerated the vehicle to actual motion should not remove his conduct from that intended to be proscribed by the statute.

I would reverse, on the basis that "operating" and "driving" are synonymous, or in the alternative, even if a distinction is recognized, respondent was in physical control of his vehicle and was therefore a "driver" under the Code definition of the term.

LITTLEJOHN, J., concurs.